IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID KRUPA, | ) |
| Plaintiff, | ) Case No. 1:19-cv-00543 |
| v. | ) |
| MARTY QUINN, MICHAEL J. MADIGAN, CITIZENS FOR MARTY QUINN, and 13TH WARD DEMOCRATIC ORGANIZATION, | ) Hon. Thomas M. Durkin |
| Defendants. | ) |

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants Marty Quinn, Michael J. Madigan, Citizens for Marty Quinn and 13th Ward Democratic Organization (collectively "defendants") jointly request that this Court dismiss the federal claims in plaintiff's complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and decline to exercise jurisdiction over his state-law claims under 28 U.S.C. § 1367, dismissing them without prejudice. Plaintiff fails to adequately allege any federal claims, primarily because he does not allege any defendant deprived him of any constitutional or federal right. Nor does he allege any personal involvement by any defendant, or any conduct by any defendant that amounts to state action, as opposed to private political conduct not actionable under 42 U.S.C. § 1983.

**Background**

Plaintiff was a candidate in and appeared on the ballot for the February 26, 2019 election for alderman in the 13th Ward of the City of Chicago. *See* Complaint, Docket Number 1 (Dkt. 1, ¶ 30) Marty Quinn is the incumbent alderman for the 13th Ward, and Citizens for Marty Quinn is his political campaign committee. (Dkt. 1, ¶¶ 4, 6) After the votes were counted, Mr. Quinn received

86.04% of the votes cast—9,013 more votes (10,759 to 1,746) than plaintiff. Mr. Quinn's margin of victory was the largest in any aldermanic contest in the City of Chicago in that election.[1]

Plaintiff's complaint, filed almost one month before the election, curiously claims that Defendants deprived him of his First and Fourteenth Amendment rights by "conspiring" to "cause him to withdraw from running for Alderman or else hinder his campaign to the point where he could not get sufficient signatures to obtain ballot access in the municipal election of February 26, 2019." (Dkt. 1, ¶ 33) In fact, plaintiff's complaint is premised on the notion that defendants deprived him of ballot access. (*See, e.g, id.*) Yet, in the same complaint, plaintiff freely admits he gained access to the ballot. (Dkt. 1, ¶ 45, stating "[t]he Board acted upon the filing and the Objection Proceeding was dismissed, leaving DAVID's name on the ballot for Alderman in the 13th Ward of the City of Chicago in the municipal election of February 26, 2019.")

As a result, plaintiff's lawsuit alleges a deprivation of a constitutional right of which he admits he was not deprived. Plaintiff's complaint not only fails to plead a cause of action, it also abuses this Court for plaintiff's political purposes to, as his own complaint claims, "attack" Defendants. (Dkt. 1, pg. 2, stating "[t]hat curtain will be ripped aside, for David Krupa is not only not afraid, he is now on the attack.")

Plaintiff's complaint is generally false, often defamatory, and periodically delusional. In considering a Rule 12(b)(6) motion, however, the Court "construes the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor.*" Wilson v. Price*, 624 F.3d 389, 391 (7th Cir.

---

[1] Defendants ask this Court to take judicial notice of the results of the February 26, 2019 election, which are publicly available at: https://chicagoelections.com/en/election-results.asp?election=210. *See Bowen v. Bd. of Election Commissioners*, No. 16 C 217, 2017 U.S. Dist. LEXIS 122856, at *14, 2017 WL 3334854 (N.D. Ill. Aug. 4, 2017) (taking judicial notice of aldermanic election results). This website permits users to search the results of every contest in the February 26, 2019 election, including the results of the aldermanic election in the 13th Ward.

2010). Defendants thus accept the allegations in the Complaint as true for purposes of this motion only, but do not admit the validity of any of them. That said, even accepting plaintiff's allegations as true, this Court should dismiss the federal claims under Rule 12(b)(6) with prejudice.

## Argument

Counts I through IX of plaintiff's complaint are brought under 42 U.S.C. § 1983. (Dkt. 1, ¶¶ 51-145)[2] A cause of action under § 1983 requires that: (1) a person acting under color of state law (2) deprived the plaintiff of a right secured by the Constitution or federal law. *Parker v. Franklin County Cmty. Sch. Corp.*, 667 F.3d 910, 925 (7th Cir. 2012).

Counts I, II, III, and IV claim a deprivation of plaintiff's First Amendment rights by Mr. Madigan, Mr. Quinn, Citizens for Quinn,[3] and 13th Ward Democratic Organization, respectively. Plaintiff claims Defendants deprived him of his First Amendment rights by "intentionally engaging in and directing actions to intimidate DAVID into withdrawing from a campaign for Alderman" (Dkt. 1, ¶¶ 53, 62, 72, 82); "preventing DAVID from obtaining sufficient political support and signatures upon Nominating Petitions to obtain access to the ballot" (Dkt. 1, ¶¶ 54, 63, 73, 83); and "cause the BOARD to remove DAVID's name from the ballot for the municipal election" (Dkt. 1, ¶¶ 55, 64, 74, 84).

In Counts V, VI, VII, and VIII, plaintiff makes the same accusations, yet this time claiming the purported acts are a violation of his Fourteenth Amendment equal protection rights. (Dkt. 1, ¶¶ 89-126) In Count IX[4] plaintiff claims a § 1983 conspiracy to "deprive DAVID of his rights under the First Amendment and Fourteenth Amendment, as detailed *supra* in Counts I through VIII."

---

[2] Plaintiff has mistakenly labeled Count IX as Count XI. Count IX alleges a conspiracy count under § 1983 (Dkt. 1, ¶¶ 137-45), while Count XI alleges a state-law claim under 10 ILCS 5/29-17 (Dkt. 1, ¶¶ 150-54).
[3] Plaintiff incorrectly identifies Citizens for Quinn as Friends of Quinn throughout Count III. (*See*, Dkt. 1, ¶¶ 71-78).
[4] *See* note 2.

3

(Dkt. 1, ¶ 140) As the allegations in each count are all the same, the arguments below apply equally to each count.

## I. Plaintiff Was Not Deprived of Any Constitutional Right

The Court should dismiss Counts I through IX because plaintiff has failed to allege that defendants deprived him of any constitutional right. Plaintiff's complaint generally alleges that defendants tried to intimidate him, coerced and tricked voters, and filed false affidavits with the Board to keep plaintiff from appearing on the ballot. (Dkt. 1, ¶¶ 53-57, 62-66, 72-76, 82-86, 91-95, 100-04, 110-14, 120-24, 144) But plaintiff acknowledges that he appeared on the ballot and finished out his campaign. (Dkt. 1, ¶ 45) Because plaintiff acknowledges he appeared on the ballot, plaintiff cannot claim that he was deprived of any constitutional right.

Plaintiff's complaint makes various aspersions against defendants. But under § 1983, it is not enough for a plaintiff to allege that government officials "acted badly, even tortiously"—their actions must "rise to the level of a constitutional violation." *Tun v. Whitticker*, 398 F.3d 899, 903 (7th Cir. 2005). "[E]very official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).

Taking plaintiff's allegations as true for purposes of this motion, defendants' alleged conduct did not deprive plaintiff of any federal constitutional right. First, plaintiff claims that defendants tried to intimidate voters so that plaintiff could not obtain enough signatures to get his name on the ballot. (Dkt. 1, ¶ 33) Yet he also notes that he "filed Nomination Petitions containing 1,703 valid voter signatures, a multiple of the minimum requirement of 473 valid voter signatures." (Dkt. 1, ¶

36) In other words, plaintiff was able to garner more than enough support to get on the ballot—regardless of any purported "conspiracy."[5]

Second, plaintiff claims that defendants procured false affidavits from 13rd Ward voters revoking their signatures on plaintiff's nominating petitions "in an attempt to defraud the BOARD into removing the name of [plaintiff] from the ballot of the municipal election of February 26, 2019." (Dkt. 1, ¶ 38) But just a few paragraphs later, plaintiff acknowledges that the Board dismissed the objection filed against plaintiff's petitions, "leaving [plaintiff's] name on the ballot for Alderman in the 13th Ward of the City of Chicago in the municipal election of February 26, 2019." (Dkt. 1, ¶ 45) Plaintiff thus admits that defendants did not deprive him of any right—he *concedes* the purported acts by defendants did not keep him off the ballot.

Finally, plaintiff contends that defendants tried to intimidate him so he would withdraw from the race. (Dkt. 1, ¶¶ 53, 62, 72, 82, 91, 100, 110, 120) But plaintiff did not withdraw from the race. And in fact, in the "introductory statement" to his complaint, plaintiff says, "David Krupa is not only not afraid, he is now on the attack." (Dkt. 1, pg. 2) He even claims that he is "a very brave, serious young man who has dared to challenge the Chicago Machine[.]" (Dkt. 1, pg. 1) Plaintiff cannot claim that he was intimidated in violation of his constitutional rights, yet open the complaint with an introductory statement that pronounces that he was not intimidated because he is "brave" and "on the attack." *See*, *Wilson*, 624 F.3d at 391 (taking as true all well pleaded allegations).

Plaintiff's complaint was filed nearly a month before the election. Since then, he lost handily to Mr. Quinn. This Court should not grant plaintiff leave to amend his complaint to claim defendants' alleged conduct prevented him from winning the election. Failure to win an election is

---

[5] Plaintiff alleges the "conspiracy" was defendants working "in conjunction to ensure that QUINN would retain his seat as Alderman of the 13th Ward of the City of Chicago in the municipal elections of February 26, 2019 by acting against DAVID, his supporters, and other persons in the 13th Ward in the City of Chicago." (Dkt. 1, ¶ 142) If this is a "conspiracy" under § 1983, then so is any political campaign.

5

an insufficient basis for a § 1983 claim as plaintiff had no constitutional right to win the election. *See N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 205 (2008) ("None of our cases establishes an individual's constitutional right to have a 'fair shot' at winning the party's nomination."); *Parks v. City of Horseshoe Bend*, 480 F.3d 837, 840 (8th Cir. 2007) (losing candidate for local treasurer could not establish § 1983 claim because "[t]here is no constitutional right to be elected to a particular office"); *Flinn v. Gordon*, 775 F.2d 1551, 1554 (11th Cir. 1985) (allegation that plaintiff was deprived of employment as state legislator insufficient to state § 1983 claim; "[a]lthough he certainly had a constitutional right to run for office and to hold office once elected, he had no constitutional right to win an election"); *Gersten v. Rundle*, 833 F. Supp. 906, 915-16 (S.D. Fla. 1993) (claim that defendant had abused her political power to thwart plaintiff's campaign failed to state claim under § 1983 because loss of election cannot constitute deprivation of constitutional right), *aff'd* 56 F.3d 1389 (11th Cir. 1995); *Lahaza v. Azeff,* 790 F. Supp. 88, 92 (E.D. Pa. 1992) (allegations by candidate for local election that conspiracy among township board and election opponent caused candidate to be deprived or opportunity to win primary election failed to state a § 1983 claim because there is no federally protected right to win public office); *Rayner v. Chicago Bd. of Election Commissioners*, No. 78 C 5116, 1979 U.S. Dist. LEXIS 13778, *3-4 (N.D. Ill. Mar. 14, 1979) (plaintiff failed to allege constitutional deprivation by alleging that defendants engaged in fraud in counting votes during election; "[t]he injury peculiar to plaintiff is his defeat in the election," which was not a deprivation of a constitutional right).[6]

Plaintiff fully exercised his constitutional rights to participate in the February 26th election. The voters overwhelmingly rejected him. But defendants did not deprive him of that right to participate, as plaintiff's own complaint freely admits. He therefore cannot state a § 1983 claim

---

[6] Defendants' counsel used Lexis to prepare this motion. Per the Court's standing order, defendants have included, where possible, Westlaw citations. Unfortunately, Lexis does not provide Westlaw citations for every unpublished decision available through its service.

because he has not been deprived of a constitutional or federal right. Counts I through IX should be dismissed with prejudice.

## II. The Complaint Contains Improper Group Pleading That Fails To Identify Defendants' Personal Involvement In Any Alleged Constitutional Deprivations

Counts I through IX of the complaint also must be dismissed because they are riddled with improper group pleading. First, by referring to "defendants" collectively throughout his complaint, Plaintiff impermissibly lumps together all of their alleged conduct rather than identifying the specific conduct of each defendant. Second, Plaintiff vaguely alleges that defendants generally or one or more of the political committee defendants, through unidentified "operatives" and "agents," tried to intimidate him and 13th Ward voters, and filed an objection to his nominating petitions. (Dkt. 1, ¶¶ 34, 40, 44, 48, 49) Plaintiff does not name these operatives and agents, say which of the four defendants they were working for, say how many of these agents or operatives were involved, or allege how any of the four defendants directed the conduct of these agents or operatives. Because the complaint fails to put defendants on notice of how they were allegedly involved in depriving plaintiff of his rights, it must be dismissed.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). A defendant may be liable under § 1983 only if he or she directly participated in a constitutional violation. *Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). For supervisors, the direct-participation requirement is satisfied where the plaintiff shows that the unconstitutional conduct occurred at the supervisor's direction or with his knowledge and consent. *Id.* But a § 1983 defendant may not be held vicariously liable under a theory of *respondeat superior*. *Maniscalco v. Simon*, 712 F.3d 1139, 1145-46 (7th Cir. 2013).

Because of the personal-involvement requirement, claims brought under § 1983 generally must avoid "group pleading," *i.e.*, merely referring to the defendants collectively without giving "each defendant sufficient notice of what he or she purportedly did wrong." *Atkins v. Hasan*, No. 15 CV 203, 2015 U.S. Dist. LEXIS 80176, at *7, 2015 WL 3862724 (N.D. Ill. June 22, 2015). Allegations that "defendants" or "one or more" of the defendants performed or directed certain acts, without more, fails to satisfy the personal-involvement requirement. *See, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that "one or more of the Defendants" engaged in conduct failed to meet personal-involvement requirement); *Lattimore v. Village of Streamwood*, No. 17 C 8683, 2018 U.S. Dist. LEXIS 79706, at *10-11, 2018 WL 2183991 (N.D. Ill. May 11, 2018) (allegations regarding the alleged acts of "Responding Officers" or "Defendant Officers" insufficient to allege personal involvement where there were five "Responding Officers" and eight "Defendant Officers" and complaint failed to identify what they "did or did not do in relation to [the] constitutional claims"); *Atkins*, 2015 U.S. Dist. LEXIS 80176, at *8-10, 2015 WL 3862724 (allegations that "[d]efendants, or other individuals acting at the direction of, agreement with and/or with the actual knowledge of the [d]efendants" failed to "alert each of the individual . . . defendants" what conduct they personally participated in or "which (if any) of those actions are alleged to have taken place at that [defendant's] direction, or with their knowledge and consent").

Here, plaintiff divides defendants' alleged acts into three categories: 1) the "Initial Conspiracy" (Dkt. 1, ¶¶ 33-36); 2) the "Expanded Conspiracy" (Dkt. 1, ¶¶ 37-40); and 3) the "Objection Proceeding" (Dkt. 1, ¶¶ 41-50). None of the categories identifies how each defendant directly participated in any alleged violation of plaintiff's constitutional rights. In fact, there is not one allegation that Mr. Madigan, Mr. Quinn, or the defendant political committees personally did anything.

8

With respect to the "Initial Conspiracy," plaintiff generally alleges that "Defendants through their agents and operatives" tried to intimidate him into withdrawing from the race. (Dkt. 1, ¶ 34) To support this allegation, he states that unidentified "[p]airs of large male operatives and/or agents of Defendants" followed him and that "an operative and/or agents of Defendants" threatened him. (Dkt. 1, ¶¶ 34(a), (b)) Plaintiff does not even allege these unknown men were connected to any defendant; plaintiff merely alleges that "upon information and belief" he thinks these men are connected to the 13th Ward Democratic Organization. (Dkt. 1, ¶ 34(a))

As empty as those allegations are, plaintiff then makes vague allegations of conduct in the *passive voice* without even attempting to identify the actors: "[a]ttempts were made to blackmail [plaintiff]" and "[h]arassment of [plaintiff] occurred on social media, with persons using fake accounts and identities." (Dkt 1, ¶¶ 34(c), (d)) There is no way to tell if plaintiff is claiming that defendants personally tried to blackmail him and harass him on social media, if someone allegedly employed by defendants did so, or if someone wholly unrelated to defendants performed these acts. *See*, *Gressel v. Thorpe*, No. 15-cv-180-jdp, 2016 U.S. Dist. LEXIS 53711, at *8 (W.D. Wis. Apr. 21, 2016) ("As the complaint currently exists, plaintiff relies heavily on passive voice and avoids identifying what, exactly, the named defendants did during the story of his untreated dental problems. But to plead a § 1983 Eighth Amendment deliberate indifference claim, plaintiff must identify how each individually named defendant violated plaintiff's constitutional rights.").[7]

Plaintiff's "Expanded Conspiracy" allegations fare no better. He alleges that "[o]ne or more Defendants, through themselves and their operatives and agents" tried to get voters to revoke their signatures on plaintiff's nominating petitions. (Dkt. 1, ¶ 40) He then describes specific conduct and alleges that defendants participated in this conduct by "having" their "operatives and agents" do it. (Dkt. 1, ¶ 40(a)-(g)) But he does not say which of the defendants "had" these people perform these

---

[7] *See supra* Note 6.

acts, or how they "had" them do it. The Seventh Circuit rejected virtually identical group pleading in *Brooks*, 578 F.3d at 580. By vaguely alleging that some group of defendants, or unidentified operatives or agents of one or more of them, plaintiff has failed to put defendants on notice of the claims against them.

Finally, the "Objection Proceeding" allegations suffer similar defects. Regardless of the allegations, the objection was withdrawn and plaintiff appeared on the ballot. (Dkt. 1, ¶ 45) Though plaintiff does not identify how any defendant was involved with the objection proceeding, it is irrelevant as the objection was withdrawn.

It is true that in some cases, group pleading is permissible because a discrete number of defendants, such as a team of police officers, acts collectively. *See Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 U.S. Dist. LEXIS 136341, at *12-13, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013) (group pleading permissible where plaintiff alleged that three officers worked together to arrest and interrogate him in violation of his rights). This is not one of those cases. Here, plaintiff collectively refers to unspecified numbers of "operatives" and "agents" of "defendants," without saying who employed these "operatives" and "agents." This information is critical because, as explained in Argument III below, elected officials do not act as state actors when they are campaigning. *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 396 (6th Cir. 2016); *Federer v. Gephardt*, 363 F.3d 754, 757, 759 (8th Cir. 2004). So if these individuals were employed by Mr. Quinn or Mr. Madigan's governmental offices, the defenses to plaintiff's claims may be different than if these individuals worked for Mr. Quinn or Mr. Madigan's political campaigns or for the two political-organization defendants.

Under FRCP 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must allege facts which plausibly identify the existence of a defendant's personal involvement. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Without additional details regarding the "agents" or "operatives" allegedly involved, plaintiff's claims are nothing more than claims of vicarious liability against all defendants based on the purported conduct of unidentified people. As plaintiff has failed to identify how defendants were personally involved in the alleged acts of their supposed "agents" or "operatives," Counts I through IX should be dismissed.

### III.     Plaintiff Has Not Alleged State Action Taken Under Color of Law

Plaintiff has also failed to allege that any action taken by defendants was done so under color of state law. Under § 1983, "[n]ot every action by a state official or employee is to be deemed as occurring 'under color' of state law[.]" *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Rather, action under color of state law "involves a misuse of power, possessed by virtue of state law and made possible *only because the wrongdoer is clothed with the authority of state law*[.]" *Id.* (emphasis added). Accordingly, a state officer does not always act under color of state law. A state officer's conduct is only performed under color of state law if it is "related in some way to the performance *of the duties of the state office*." *Id.* (emphasis added). Thus, the acts of state officials "in the ambit of their personal pursuits are plainly excluded" from color-of-law claims. *Plaats v. Barthelmy*, 641 Fed. Appx. 624, 627 (7th Cir. 2016) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)).

Here, plaintiff alleges that defendants worked together to damage his campaign and ensure that Mr. Quinn was reelected. All of defendants' alleged acts described in the complaint were performed as private political actors, not as government officials. Certainly, none of them were made possible *solely* by Mr. Quinn's or Mr. Madigan's government positions. For example, plaintiff alleges that "operatives and/or agents of Defendants" followed him as he went door-to-door; stood behind him "in a hostile manner"; threatened him with blackmail; and set up "fake [social media] accounts and identities" to threaten plaintiff and his family. (Dkt. 1, ¶ 34) Private individuals and government officers are equally capable of following someone, standing behind someone,

11

threatening to blackmail someone, or using a fake social media account. A §1983 action, however, can only be sustained by actions of government officers acting under color of state law. The complaint utterly fails to make any such allegation.

Similarly, plaintiff's allegations that unidentified agents of defendants compelled or tricked voters into signing affidavits revoking their signatures on plaintiff's nominating petitions do not sufficiently allege state action. (Dkt. 1, ¶ 40) Both private individuals and governmental officials may ask someone to sign an affidavit. Nothing about that alleged conduct is made possible solely because of Mr. Quinn's or Mr. Madigan's offices.

The same is true for the alleged filing of false affidavits with the Board. (Dkt. 1, ¶¶ 41-50) Under Illinois law, "[a]ny legal voter of the political subdivision or district in which the candidate . . . is to be voted on" may file a petition objecting to the candidate's nominating papers. 10 ILCS 5/10-8. Thus, any private individual is capable of objecting to a nominating petition. In fact, that is exactly what occurred here—Mr. Zahdan objected to plaintiff's nominating petitions as any legal voter in the 13th Ward could have.

The fact that plaintiff alleges that Mr. Zahdan filed his objection as "an operative for Defendants" changes nothing—an objector's motive in filing an objection is irrelevant. *See Havens v. Miller*, 102 Ill. App. 3d 558, 566 (1st Dist. 1981) (objector's "motive in filing the objections is irrelevant to the determination of whether the candidates failed to comply with these mandatory election laws"). Even if Mr. Zahdan filed his objection to assist Mr. Quinn's campaign, he did so as a voter in the 13th Ward, not as a government official. Certainly, he required no official government authority to file his objection.

Plaintiff's allegations that Mr. Madigan and Mr. Quinn have political power or influence because of their roles as political party officials, chairs of political committees, or skilled fundraisers are insufficient to properly plead state action. (Dkt. 1, ¶¶ 11-16, 20) Nor has he pled state action by

12

simply claiming that Mr. Quinn and Mr. Madigan's governmental and political activities "cannot be separated" from one another. (Dkt. 1, ¶¶ 46-47) If plaintiff were correct, then any prominent elected official's conduct in political affairs would automatically satisfy the color of law element—but it does not.

Courts have repeatedly held that prominent, high-ranking elected officials do not act under color of law when they act as political candidates rather than officeholders. *See*, *e.g.*, *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 396 (6th Cir. 2016) (members of Ohio Gov. John Kasich's campaign were not state actors when they were working on his campaign and not "on behalf of the governor's office"); *Federer v. Gephardt*, 363 F.3d 754, 757, 759 (8th Cir. 2004) (no state action where plaintiff alleged that member of Congress instructed people to assault him at a parade, break into his campaign headquarters, break into his home, and break into his office because those acts were allegedly performed "on behalf of Mr. Gephardt as a political candidate and private person"); *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990) (Republican candidate for Pennsylvania Auditor General was not a state actor when she promised to fire certain Democratic employees of the office during campaign); *Manax v. McNamara*, 842 F.2d 808, 813 (5th Cir. 1988) (plaintiff failed to allege that mayor engaged in state action where plaintiff simply alleged that mayor made false public statements, encouraged plaintiff's patients to file frivolous medical-malpractice suits against him, and directed others to file complaints with Texas Board of Medical Examiners); *Schneller v. Philadelphia Newsps, Inc.*, No. 11-5071, 2012 U.S. Dist. LEXIS 122058, at *11, *15, 2012 WL 3704758 (E.D. Pa. Aug. 28, 2012) (plaintiff, an independent candidate for Congress, failed to allege state action by claiming that incumbent member of Congress had "'complete and unified control of the populace, in unison with the government'" because "the role of advocate for a political candidate and the role of voters to elect an individual is not a traditional public function exclusively reserved for the state"); *Wilson*, 624 F.3d at 392; *Plaats*, 641 Fed. Appx. at 627.

Though not alleged in the complaint, a government official does not even act under color of state law by exploiting the prestige accompanying his or her position without actually using the power of his or her office. *See*, *e.g.*, *Hall v. Witteman*, 584 F.3d 859, 866 (10th Cir. 2009) ("Exploiting the personal prestige of one's public position is not state action absent at least some suggestion that the holder would exercise governmental power."); *Tierney v. Vahle,* 304 F.3d 734, 742 (7th Cir. 2002) (letter written by judge on official stationary to high school athletic director in support of swim coach was not state action; "the fact that a personal letter is written on judicial stationery cannot reasonably be thought to show, all by itself, that the sending of the letter was an act done under color of state law"); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997) ("prestige" held by state representative by virtue of his office was not enough to transform his assertion of influence in internal party central committee affairs into state action). Thus, plaintiff's allegations that Mr. Madigan and Mr. Quinn used the political influence they possess because of their offices cannot make out a claim for state action under § 1983.

Plaintiff's allegations that some of these unidentified agents and operatives said they were "from the Alderman's office" and "threaten[ed] a cutoff of Ward services" also do not establish state action. (Dkt. 1, ¶ 40(d), (f)) Courts have held that similar allegations are insufficient to establish state action. *See*, *e.g.*, *Hill v. Barbour*, 787 F. Supp. 146, 147-48, 149-50 (N.D. Ill. 1992) (off-duty police officer who shot intruder using personal firearm was not acting under of color of law simply because he shouted, "Sheriff's Office"); *Brown v. Kendzora*, No. 94 C 243, 1994 U.S. Dist. LEXIS 11956, at *5, 1994 WL 463865 (N.D. Ill. Aug. 22, 1994) (off-duty sheriff's deputy's threat that local police would not offer protective services to plaintiff did not establish state action). Plaintiff does not allege that any of these individuals actually were governmental employees or what "Ward services" could unilaterally be cut off. Nor is there any allegation that any services actually were cut off. These vague accusations cannot turn the alleged statements of otherwise purely private actors into state action.

Nothing in the complaint says that defendants used authority that they possess *solely* because of their government offices to deprive plaintiff of any constitutional right. In the most generous reading of plaintiff's complaint, it merely alleges public officials acted in their private political capacity to reelect Mr. Quinn. But anyone, even plaintiff, can act in a private political capacity. Thus, plaintiff has failed to allege that any of the defendants acted under color of law, and the Court should dismiss Counts I through IX of the complaint.

### IV. Plaintiff's State Law Claims Should Be Dismissed for Lack of Supplemental Jurisdiction

Counts X and XI purport to allege claims under the Illinois Election Code. If this Court dismisses plaintiff's § 1983 claims with prejudice, this Court should decline to exercise supplemental jurisdiction over the state law claims and dismiss them without prejudice. 28 USC § 1367(c)(3).

### Conclusion

For the reasons stated above, defendants respectfully request that this Court grant their motion to dismiss. They further request that this Court dismiss Counts I through IX of plaintiff's complaint with prejudice, since any attempt to remedy the defects in those counts would be futile. *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001).

    Respectfully submitted,

    HINSHAW & CULBERTSON LLP

    /s/ Adam R. Vaught
    Adam R. Vaught

Adam R. Vaught
Carson R. Griffis
Vincent M. Rizzo
Lari A. Dierks
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
avaught@hinshawlaw.com
cgriffis@hinshawlaw.com
vrizzo@hinshawlaw.com
ldierks@hinshawlaw.com

16

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically on March 29, 2019 using the Court's CMF/ECF system, which will accomplish service electronically on all counsel of record.

<u>/s/ *Adam R. Vaught*</u>

303465410v1 1018725