```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
     DAVID KRUPA,                    )
 4                                   )
                    Plaintiff,       )
 5                                   )
                                     )
 6   -vs-                            )  Case No. 19 CV 00543
                                     )
 7                                   )  Chicago, Illinois
     MARTY QUINN, et al.,            )  October 28, 2019
 8                                   )  11:31 a.m.
                    Defendants.      )
 9

10             TRANSCRIPT OF PROCEEDINGS - Status
            BEFORE THE HONORABLE STEVEN C. SEEGER
11
     APPEARANCES:
12
     For the Plaintiff:     ANTHONY J. PERAICA & ASSOCIATES, LTD.
13                          BY:  MR. STEPHEN F. BOULTON
                            5130 South Archer Avenue
14                          Chicago, IL  60632
                            (773) 735-1700
15

16   For the Defendants:    HINSHAW & CULBERTSON, LLP
                            BY:  MR. ADAM ROBERT VAUGHT
17                          151 North Franklin Street
                            Suite 2500
18                          Chicago, IL  60606
                            (312) 704-3584
19

20

21

22   Court Reporter:        AMY M. SPEE, CSR, RPR, CRR
                            Official Court Reporter
23                          United States District Court
                            219 South Dearborn Street, Room 1728
24                          Chicago, Illinois  60604
                            Telephone:  (312) 818-6531
25                          amy_spee@ilnd.uscourts.gov
```

1        (Proceedings heard in open court:)
2            THE CLERK:  19 CV 543, Krupa versus Quinn, *et al.*
3            MR. BOULTON:  Good morning, Your Honor.
4        Steve Boulton for the plaintiff.
5            MR. VAUGHT:  Good morning, Your Honor.
6        Adam Vaught on behalf of the defendants.
7            THE COURT:  Good morning.  Thank you for being here.
8        I received the copy of the joint initial status
9   report.  I have a few comments on it, but I'd like to hear
10  first from the plaintiff.
11           What's the backstory of the lawsuit?
12           MR. BOULTON:  Well, the backstory, Your Honor, is
13  basically -- what has been pled is that Mr. Krupa was a
14  candidate.  I believe it's fairly well put out there that he
15  was first intimidated by the defendants, but then, more
16  importantly, they went out to all these voters within the ward
17  to get these revocations, of which only 197 actually matched
18  up to Mr. Krupa's signatories.
19           THE COURT:  Go -- I'm sorry.  You're doing great.
20  Excuse me.  I told my court reporter I would stick up for her
21  when people speak too quickly.
22           MR. BOULTON:  I am fast, Judge.  I apologize.
23           THE COURT:  So we're all going to -- I'm going to try
24  to set an example by speaking slowly.  I want to make sure
25  that she takes down everything you said.  So excuse me for the

1  interruption, but go ahead.
2  MR. BOULTON: Our backstory is that this young man
3  ran for alderman and was struck down essentially for it by
4  these people by, first, intimidating him physically, following
5  him around the ward, talking to people that he talked to
6  saying, "Don't talk to him." That's just part of it.
7  The major part of it, though, Your Honor, is that
8  they went around and got 2700 revocations of the signatures on
9  his petitions, then submitted those to the board.
10 Now, of those 2700, he only turned in 1700
11 signatures. They turned in 2700 revocations of signatures.
12 And of those 2700, only 197 signatures actually correlated to
13 people that he had on his signature petitions.
14 So there are some 2,000 or more completely false,
15 verified, under oath revocations of signatures that were
16 tendered by the defendants to the Chicago Board of Election
17 Commissioners in a scheme to get this young man off the
18 ballot.
19 Now, that couldn't occur, Your Honor, except for the
20 fact that this was Marty Quinn; he was the alderman. This was
21 Michael Madigan; he was the Speaker of the House. They have a
22 very powerful 13th Ward organization, the power of which rests
23 upon their patronage through the city, their actions and their
24 ability to manipulate the power of the government to get what
25 they want done.

1     And so, therefore, Your Honor, we bring this as a
2  1983 claim, not only for -- on different grounds, Your Honor,
3  First Amendment and equal protection; and that we are moving
4  forward against all of these defendants together with --
5  there's a conspiracy count in there to violate 1983 and
6  parallel Illinois statutes regarding elections.
7     So our claim is essentially that there has been a
8  scheme to harm the constitutional rights of this young man and
9  his ability to run for alderman through a completely unlawful
10 scheme and essentially an attempt to defraud the Chicago Board
11 of Elections.
12     THE COURT: Okay. Thank you. There was a lot there.
13     I'll give defense counsel an opportunity to say
14 whatever you'd like to say at the outset by way of
15 introduction to the case.
16     MR. VAUGHT: Thank you, Your Honor.
17     As he notes, this was a political campaign. You
18 know, there's a few things. Just related to the complaint, he
19 talks about the intimidation of people going around. Of
20 course the complaint on -- you know, does not name these
21 individuals.
22     The two defendants are Alderman Quinn, Speaker
23 Madigan, and citizens for Quinn in the 13th Ward Democratic
24 Organization. You know, there is no allegation that those
25 individuals did anything.

1 Regarding the affidavits, yes, affidavits revoking
2 the signature for Mr. Krupa's petition were filed. What is
3 lost here a little bit is that those -- under the state law,
4 those revocations have to be filed before the petitions.
5 So the affidavits were filed, and then a day or two
6 later Mr. Krupa files his petitions and he says, "I only filed
7 1700." That doesn't mean that he couldn't have thrown out,
8 you know, 2,000.
9 But regardless, the challenge was withdrawn.
10 Mr. Krupa ran for office. He lost. There's no violation of
11 any constitutional right, which is what the motion to dismiss
12 we have pending argues. And we also argue that there is no
13 state action. Everything here is, you know, a political
14 complain.
15 THE COURT: Thank you.
16 I had a preliminary question for you both. When I
17 first looked at the case, I wondered if this case invokes the
18 political question doctrine. The political question doctrine,
19 as you know, is a justiciability doctrine. It basically says
20 that courts ought not enter the political thicket and decide
21 political disputes.
22 I don't believe that the defendant invoked the
23 political question doctrine in your papers, although there may
24 be some illusion to that kind of a concept. I'm not saying
25 that there's a waiver, because it's a justiciability doctrine.

Case: 1:19-cv-00543 Document #: 35 Filed: 11/04/19 Page 6 of 17 PageID #:138

6

1  But I would just throw out to the parties, have you
2  about whether the political question doctrine applies to this
3  case? And would anyone like an opportunity to address that?
4        MR. BOULTON: I --
5        THE COURT: If I could.
6        Because I, as a federal court, have to guard my
7  jurisdiction. I am not sure that it's appropriate for me as a
8  federal judge to be entering this political environment.
9        MR. BOULTON: I have, Your Honor. And my answer to
10 you is that the political question doctrine has been somewhat
11 distorted by -- in the application more than the actual fact.
12 It is based upon separation of powers, a political question,
13 meaning is this something within the realm of the legislature
14 that they have to decide within their political machinations
15 as opposed to anything involving politics whatsoever?
16       So my point is that often this doctrine gets
17 misstated that anything having to do with politics can't be
18 tried in the court. Actually we think it's a much more
19 limited doctrine, Your Honor; that anything having to do with
20 the exercise of the political power by the executive or the
21 other branches of government in which the Court would
22 essentially be substituting itself into those powers when
23 there is a political process of the people's will that has to
24 go on to make that decision, that becomes a political
25 question.

1             That is our view of the issue.
2             MR. VAUGHT:  If I may, Your Honor.
3             THE COURT:  Yeah, please.
4             MR. VAUGHT:  I would appreciate the opportunity to
5    brief it.  I do think the political question doctrine does
6    have implication here.  And I'm forgetting my timeline of when
7    the motion was filed.  But when the Supreme Court's recent
8    decision on redistricting just came out --
9             THE COURT:  Exactly.
10            MR. VAUGHT:  -- where the Supreme Court has said that
11   when you're having complaints about allocating political party
12   amongst powers or candidates, then the federal courts can't
13   really step in because they're not suited to make those
14   decisions.
15            In fact, there is a lot of cases out there where
16   federal courts have declined to intervene into local elections
17   less they overrule, you know, the voters.
18            THE COURT:  Exactly.
19            When I look at the complaint, the very first
20   paragraph says that the plaintiff is bringing a quote -- I'm
21   sorry -- that the plaintiff has dared to "challenge the
22   Chicago machine to end the rapacious reign of corrupt power
23   only to see just how shockingly corrupt that power can be in
24   defending its ill-gotten power."
25            It goes on to complain about "machine politics in

1  Chicago." And it says, "Those politics must end and will end
2  if Chicagoans are willing to follow the lead of Plaintiff
3  David Krupa."
4  When I read that, it sounded to me like a political
5  ad. It sounds like the type of thing that you would see on
6  your television before an election. It's not the type of
7  thing that you usually hear in a federal courthouse. Federal
8  courthouses are not the right place to settle political
9  scores.
10  So what I'd like to do is give the parties a full and
11  fair opportunity to address the political question doctrine.
12  I don't know if it applies to this particular case, and I'm
13  certainly not ruling on that.
14  Plaintiff's counsel may well be right that the
15  doctrine doesn't apply, but I have a few questions and
16  concerns about it. And it would help the Court if the parties
17  would be kind enough to address that.
18  MR. BOULTON: Not a problem, Judge.
19  THE COURT: So what I'd like to do is give you folks
20  an opportunity to file whatever you'd like to file. I can
21  give you somewhere four to six weeks, anywhere in there,
22  whatever people would like, and we'll set a briefing schedule.
23  Is four weeks sufficient or do you need a little more
24  time?
25  MR. BOULTON: Four weeks is fine.

1         MR. VAUGHT:  That's fine, Judge.
2         THE COURT:  Let's give them a date four weeks from
3    today.
4         THE CLERK:  That's the week of Thanksgiving.
5         THE COURT:  Let's -- so the week of Thanksgiving
6    is -- is it the Monday of Thanksgiving?
7         THE CLERK:  Mm-hmm.
8         THE COURT:  Is anyone bent out of shape if we
9    schedule it for the Monday of Thanksgiving?
10        MR. VAUGHT:  No, that would be fine.
11        THE COURT:  All right.  Let's do it for -- file it
12   for the Monday of Thanksgiving.
13        And why don't we do this:  Why don't we say that the
14   defendant can address the political question doctrine four
15   weeks from today.  That's the Monday of Thanksgiving.  And
16   then I'll give the plaintiff four weeks to respond.
17        MR. BOULTON:  That's fine, Judge.
18        THE COURT:  Is that okay?
19        And then -- so four weeks from then.
20        THE CLERK:  December 23rd.
21        THE COURT:  December 23rd.
22        MR. BOULTON:  Your Honor, I just as soon you moved it
23   up.
24        THE COURT:  I was going to say that.  Yeah, that
25   doesn't do anybody any good.  Why don't we do the preceding

1  Wednesday.
2      MR. BOULTON: What day of the week is the 23rd? I'm
3  sorry.
4      THE CLERK: Monday.
5      THE COURT: Monday. That's no good.
6      MR. BOULTON: I could do it by the Wednesday
7  before -- it won't take me long. As you know, I've looked at
8  it, so I can --
9      THE COURT: Yeah, yeah, yeah. You seem ready to go
10 today. So we'll do -- the Wednesday before the 23rd is?
11     THE CLERK: December 18.
12     THE COURT: December 18th. So I'll give plaintiff's
13 counsel -- excuse me -- defense counsel plenty of room in
14 light of the holidays.
15     Do you want to -- do you want four weeks? Is that
16 too long? Three weeks? Three or four weeks?
17     MR. VAUGHT: I'm trying to envision the calendar --
18     THE COURT: December 18th.
19     MR. VAUGHT: -- in my head.
20     THE COURT: So what's four weeks after December 18?
21     THE CLERK: January 15.
22     THE COURT: I'll give you until January 15th. If you
23 can do it sooner, go ahead.
24     MR. VAUGHT: Okay.
25     THE COURT: I know this schedule, folks, may seem a

1 little long and it's probably not what you expected, but I
2 feel duty-bound to get this right. And given that we've got
3 political officials here and given the nature of the
4 allegations, I'd rather give you a longer schedule that allows
5 you to fully vet the issues than not.
6     Does that schedule sound okay to everybody?
7     MR. BOULTON: We're confident, Judge.
8     THE COURT: Okay.
9     MR. BOULTON: It's okay.
10     MR. VAUGHT: Very good, Your Honor.
11     THE COURT: And I will -- I will tell you, I had a
12 few concerns about a few things in the complaint, to be
13 perfectly honest with you.
14     The complaint says that -- on Page 1: "Political
15 leaders" acted to "physically threaten and intimidate" this
16 19-year-old plaintiff.
17     I think you've got to be really careful when you use
18 a phrase like "physically threatened."
19     My question for plaintiff's counsel is: Are you --
20 just "yes" or "no," are you alleging that any of the
21 defendants physically threatened the plaintiff?
22     MR. BOULTON: Their agents, Your Honor --
23     THE COURT: "Yes" or "no"?
24     MR. BOULTON: They made statements --
25     THE COURT: I'm sorry. Counsel, "yes" or "no," are

1  you alleging that the defendants physically threatened the
2  plaintiff?
3              MR. BOULTON:  Yes.
4              THE COURT:  Directly or through someone else?
5              MR. BOULTON:  These individual defendants, Mr. Quinn
6  and Mr. Madigan, no.  You said "defendants" in the general
7  term.
8              THE COURT:  Okay.  Well, we can go one by one.
9              You have sued Mr. Quinn and Mr. Madigan and then two
10 organizations.  So we'll do it one by one.
11             Are you alleging that Defendant Quinn physically
12 threatened the plaintiff?
13             MR. BOULTON:  No.
14             THE COURT:  Are you alleging that Defendant Madigan
15 physically threatened the plaintiff?
16             MR. BOULTON:  No.  I don't believe Mr. Madigan has
17 ever spoken to Mr. Quinn.
18             THE COURT:  Okay.  Are you alleging that the
19 defendants encouraged someone else to physically threaten the
20 plaintiff?
21             MR. BOULTON:  We believe that happened, Your Honor,
22 but I --
23             THE COURT:  Well --
24             MR. BOULTON:  -- we do not have the --
25             THE COURT:  You believe?

1           Just to be real clear, Counsel, do you have a good
2 faith basis for alleging that the defendants encouraged
3 someone else to physically threaten the plaintiff?
4           MR. BOULTON: Yes, because a representative of the
5 defendant organizations approached the plaintiff and had a
6 conversation with him.
7           I'll leave it at that right now, Judge.
8           THE COURT: Okay.
9           MR. BOULTON: Had a conversation by a person he knew
10 to be a representative of these organizations, which is run by
11 Mr. Madigan and run by Mr. Quinn. And our belief is that very
12 little happens in that ward without their knowledge and
13 approval, if anything, and that this individual went up to
14 Mr. Krupa and had a conversation with him, Judge. We'll leave
15 it at that.
16           THE COURT: Did you go to the State's Attorney's
17 Office or the police? Your client.
18           MR. BOULTON: I believe he -- Your Honor --
19           THE COURT: Okay.
20           MR. BOULTON: -- I apologize because I wasn't ready
21 for this question, but I believe he filed a police report.
22           THE COURT: Okay. I don't mean to put you on the
23 spot. I genuinely don't.
24           MR. BOULTON: I believe he did, Judge.
25           THE COURT: But it's a serious thing to say when

1  you're talking about a political official.  If you can back it
2  up, you can back it up, but I just want you to know that my
3  antenna went up when I saw that.  So --
4          MR. BOULTON:  Well, Your Honor, the conversation
5  occurred -- my belief is -- and you're going back a few -- we
6  filed this in January -- that he did file a police report,
7  which was promptly ignored, and that this conversation did
8  occur, Your Honor, and he was followed.
9          And the other instances, as far as him going to other
10 individuals, "Don't talk to him.  Don't talk to him."  He will
11 testify to all of this.
12         THE COURT:  Okay.  I noticed on Page 2 of the
13 complaint that the plaintiff said that the defendants had
14 thugs.  It also said that they have cronies.  It also said the
15 plaintiff is "now on the attack."
16         I will tell you, Counsel, that did not resonate with
17 me.  I had a negative reaction when I saw that.
18         You can say whatever you want in the political arena,
19 but you can't say whatever you want in my courtroom.  I can
20 tell you without a doubt no one is going to be attacking
21 anyone in my courtroom.
22         So I think that going forward, the plaintiff needs to
23 modulate the tone of the dialogue.  We're not here on an
24 evidentiary basis.  I don't know exactly what the facts will
25 show.  That's for the other day.  But I want you to know that

1  I am sensitive to the tone in this case and I want to make
2  sure that appropriate language is used.
3       So I will give you an opportunity -- I'd like after
4  this hearing for you to reread the complaint.  I'm not asking
5  that you amend, but I'd like you to reread the complaint.  And
6  if there's anything in that complaint that you think was
7  overstated in any way, I'm going to give you leave to amend to
8  take that out.
9       I'm not directing you to do that, but I just want to
10 make sure that people feel like they can back up everything
11 they say in there and use appropriate language.
12      MR. BOULTON:  I understand.
13      THE COURT:  Does that make sense?
14      MR. BOULTON:  I understand.
15      THE COURT:  I just want to try to take down the
16 temperature a little bit and make sure that this case goes in
17 an orderly way on the merits without spinning out of control.
18      Does that make sense?
19      MR. BOULTON:  Yes, Your Honor.
20      THE COURT:  Okay.  So what I would like to do is
21 this.  We've got a fully briefed motion to dismiss.  I'm going
22 to look at that while you folks look at the political question
23 doctrine.
24      I know that discovery is stayed.  Discovery is going
25 to remain stayed until we have a ruling on the motion to

1   dismiss and until I hear a reaction from you folks on the
2   political question doctrine.
3           Please don't take anything I've said today as any
4   indication from me about what I think of the merits of the
5   case.  I'm just getting to know the case, and this is all by
6   way of introduction.  But I do think there are some ways we
7   can improve how things go going forward.  And we'll try to get
8   this case through the courthouse in an orderly manner in a way
9   that follows whatever the Supreme Court's current direction is
10  on the political question doctrine.
11          Is there anything else people would like to address?
12  I'm more than happy to hear you if there's something else we
13  should cover today.
14          MR. VAUGHT:  I don't have anything, Your Honor.
15          MR. BOULTON:  No, Your Honor.
16          THE COURT:  Okay.  So thank you for coming in.  We'll
17  be in touch.
18          MR. VAUGHT:  Thank you, Your Honor.
19          THE COURT:  Thank you.
20          MR. BOULTON:  Thank you.
21      (Which were all the proceedings heard.)
22
23
24
25

```
 1                    *   *   *   *   *   *
 2                         CERTIFICATE
 3        I certify that the foregoing is a correct transcript from
 4   the record of proceedings in the above-entitled matter.
 5
 6   /s/ Amy Spee                          10/30/19
     _____         _____
 7   Amy Spee, CSR, RPR, CRR                 Date
     Contract Court Reporter
 8
```